UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     vs.<br><br>ANTHONY T. WILLIAMS,<br><br>                    Defendants. | CR NO. 17-00101 LEK<br>CV NO. 23-00187 LEK |

**ORDER DENYING MOTION TO VACATE OR SET ASIDE CONVICTION
AND DENYING A CERTIFICATE OF APPEALABILITY**

On April 25, 2023, pro se Defendant/Petitioner Anthony T. Williams ("Williams") filed, pursuant to Title 28 United States Code Section 2255, his Motion to Vacate or Set Aside Conviction ("Section 2255 Motion"). [Dkt. no. 1210.] On April 27, 2023, an Order to Show Cause ("OSC") was issued, directing Plaintiff/Respondent United States of America ("the Government") to file an answer, pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). [Dkt. no. 1212.] The Government filed its response to the Section 2255 Motion ("Answer") on July 20, 2023, and the Government filed an additional exhibit on July 21, 2023. [Dkt. nos. 1221, 1222.]

Williams filed his reply on July 26, 2023 ("Reply").[1] [Dkt. no. 1226.] Williams's Section 2255 Motion is hereby denied, and a certificate of appealability is also denied, for the reasons set forth below.

**BACKGROUND**

## I.   **The Underlying Proceedings**

The original Indictment in this case was filed on February 15, 2017. [Dkt. no. 1.] At the time of the Indictment, Williams was incarcerated in a Florida state prison. See Writ of Habeas Corpus ad Prosequendum, filed 7/10/17 (dkt. no. 23). Williams's initial appearance and arraignment began on September 25, 2017, but it was continued to September 29, 2017 in conjunction with the hearing regarding Williams's intent to represent himself pro se. See Minutes, filed 9/25/17 (dkt. no. 30).

The Superseding Indictment was filed on March 28, 2018, charging Williams with fifteen counts of wire fraud, in violation of Title 18 United States Code Section 1343, and seventeen counts of mail fraud, in violation of Title 18 United

---

[1] The document that Williams filed on July 26, 2023 is titled "Motion in Response to Government's Reply to Defendant's Motion to Vacate or Set Aside Conviction." This Court must liberally construe Williams's filing. See United States v. Jackson, 21 F.4th 1205, 1216 (9th Cir. 2022) ("Pro se motions from prisoners are to be liberally construed." (citation omitted)). Williams's July 26, 2023 filing is liberally construed as his reply in support of the Section 2255 Motion.

States Code Section 1341. [Dkt. no. 154.] The charges arise from an alleged scheme in which Williams defrauded homeowners in Hawai`i by offering mortgage reduction services, foreclosure assistance, and other related services through two entities, Mortgage Enterprise Investments ("MEI") and The Common Law Office of America ("CLOA"). [Id. at ¶¶ 1-21.]

Throughout the majority of the proceedings, Williams represented himself pro se, with the assistance of standby counsel, Lars Isaacson, Esq. See Minutes, filed 9/29/17 (dkt. no. 35) ("9/29/17 Williams Minutes"), at PageID.117 (appointing standby counsel).

Williams's jury trial began with jury selection on February 3, 2020. [Amended Minutes, filed 2/3/20 (dkt. no. 925).] On March 2, 2020, the Court's jury instructions were read, the parties gave their closing arguments, and the jury began its deliberations. [Minutes, EP: Further Jury Trial – 15th day, filed 3/2/20 (dkt. no. 941).] On March 3, 2020, the jury returned a verdict of guilty on all counts. [Verdict Form, filed 3/3/20 (dkt. no. 947).]

Williams filed his motion for judgment of acquittal on March 15, 2020. [Dkt. no. 955.] He filed supplements to the motion on March 30, 2020 and April 3, 2020. [Dkt. nos. 960, 968.] The motion, as supplemented, was denied in an order issued on August 19, 2020. [Order Denying "Defendant's 'Private

3

Attorney General Anthony Williams Motion for Judgment of Acquittal,'" filed 8/19/20 (dkt. no. 1070) ("8/19/20 Order").[2]]

On October 26, 2020, Williams was sentenced to: two hundred forty months of imprisonment as to each count, to run concurrently with each other but consecutively to his sentence in the Florida state court case, Case No. 17-000074CF10A;[3] three years of supervised release as to each count, to run concurrently; restitution of $230,527.13; and a special assessment of $3,200, *i.e.* $100 per count. See Minutes, filed 10/26/20 (dkt. no. 1112), at PageID.13176; Judgment in a Criminal Case, filed 10/30/20 (dkt. no. 1115), at PageID.13188-89, PageID.13192.

Williams filed his Notice of Appeal on October 30, 2020. [Dkt. no. 1118.] The United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") noted the docket reflected that Williams was proceeding pro se, and informed Williams that the Ninth Circuit does not appoint standby counsel. See Ninth Circuit Order, filed 11/12/20 (dkt. no. 1128). Deanna Dotson, Esq., was ultimately appointed to represent Williams in the

---

[2] The 8/19/20 Order is also available at 2020 WL 4883937.

[3] The Florida state court case is State of Florida v. Anthony Troy Williams, in the Seventeenth Judicial Circuit, Broward County, Florida ("Florida Case"). See Answer, Exh. 7 (Judgment, filed 6/23/17 in the Florida Case ("Florida Judgment")).

appeal. See Amended CJA 20 form, filed 11/20/20 (dkt. no. 1133). The Ninth Circuit denied Williams's appeal and affirmed his conviction. See Ninth Circuit Memorandum, filed 3/16/22 (dkt. no. 1181).[4] The Ninth Circuit held that: this Court neither abused its discretion nor committed manifest error by failing to excuse Juror No. 5 for actual bias; Juror No. 5's circumstances did not warrant a finding of implied bias; and Williams failed to establish a prima facie case that the jury venire did not include an adequate representation of African Americans in comparison to the number of African Americans in the community. [Ninth Circuit Memorandum at 2-3.] Williams did not raise any other issues before the Ninth Circuit. See generally United States v. Williams, No. 20-10354 (9th Cir.), Appellant's Opening Brief, filed 4/28/21 (dkt. no. 18).

The Ninth Circuit issued its Mandate on April 7, 2022. [Dkt. no. 1182.] Williams did not file an application for a writ of certiorari with the United States Supreme Court.

## II.  **The Section 2255 Motion**

Williams's Section 2255 Motion alleges this Court should vacate or set aside his conviction on the following grounds: the Government engaged in selective prosecution ("Ground One"); Williams's prosecution violated the double

---

[4] The Ninth Circuit Memorandum disposition is also available at 2022 WL 808031.

jeopardy clause of the Fifth Amendment ("Ground Two"); he was deprived of his Fourteenth Amendment equal protection rights because there were no members of his race in the jury pool and the jury ("Ground Three"); the multiple continuances of the trial date over Williams's objections violated his right to a speedy trial ("Ground Four"); this Court violated his Sixth Amendment rights when it struck all of his witnesses from the contiguous United States ("Ground Five"); his appellate counsel rendered constitutionally ineffective assistance ("Ground Six"); this Court should have recused itself ("Ground Seven"); this Court prevented him from introducing pertinent evidence that would have proven his innocence ("Ground Eight"); judicial bias prevented him from receiving a fair trial ("Ground Nine"); and the Government's use of his prior arrest and convictions in Florida were unfairly prejudicial ("Ground Ten").

The Government argues: Williams raised Ground Three on appeal, and he cannot relitigate that issue in his Section 2255 Motion; Grounds One, Two, Four, Five, Seven, Eight, Nine, and Ten are procedurally defaulted and there are no cause and prejudice excusing the procedural default; and Williams did not receive ineffective assistance of counsel during his appeal. See Answer at 1.

**STANDARD**

Section 2255(a) states:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

This Court has described the standards applicable to

Section 2255 motions as follows:

A court may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." R. 4(b), Rules Governing Section 2255 Proceedings. A court need not hold an evidentiary hearing if the allegations are "palpably incredible [or] patently frivolous," Blackledge v. Allison, 431 U.S. 63, 76 (1977) (internal quotation marks and citation omitted), or if the issues can be conclusively decided on the basis of the evidence in the record. See United States v. Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"). Conclusory statements in a § 2255 motion are insufficient to require a hearing. United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993). A petitioner must "allege specific facts which, if true, would entitle him to relief." United States v. Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003) (internal quotation marks and citation omitted).

<u>Malivao v. United States</u>, CR 13-00885 LEK, 2018 WL 6834704, at *2 (D. Hawai`i Dec. 28, 2018) (alteration in <u>Malivao</u>) (some citations omitted).

The issues raised in Williams's Section 2255 Motion are legal issues that "can be conclusively decided on the basis of the evidence in the record," including the record of the underlying proceedings. <u>See</u> <u>Mejia-Mesa</u>, 153 F.3d at 929. Because there are no factual disputes that must be resolved in order to rule on the legal issues presented in the Section 2255 Motion, an evidentiary hearing is unnecessary in this case.

<u>**DISCUSSION**</u>

I.   <u>**Request to Strike**</u>

This Court first turns to Williams's request to strike the Government's amended Exhibit 8 as untimely. <u>See</u> Reply at PageID.15023. The Government timely filed the Answer on July 20, 2023. <u>See</u> OSC at 1 (stating the 7/20/23 deadline). The Answer includes a nine-page declaration by Dotson, Williams's counsel on appeal. <u>See</u> Answer, Exh. 8 (Declaration of Counsel) ("Dotson Decl."). The Dotson Declaration refers to Exhibits A through M, but no exhibits are attached to the Dotson Declaration.

On July 21, 2023, the Government filed an amended version of Exhibit 8 ("Amended Dotson Declaration"). <u>See</u> dkt.

8

no. 1222.[5] The Amended Dotson Declaration consists of the same nine-page declaration filed with the Answer, but the Amended Dotson Declaration also includes Exhibits A through M. Compare dkt. no. 1222-1 (Amended Dotson Decl.) with dkt. no. 1221-8 (Dotson Decl.). Williams argues the Amended Dotson Declaration should be stricken because the Government filed it after the July 20, 2023 deadline, and the Government did not obtain either leave of Court to file the declaration after the deadline or an extension of the deadline. [Reply at 1.] The Government explains that Exhibits A through M are "approximately 20 megabytes in size," and, "[b]ecause of a technical issue, the government was unable to upload Ms. Dotson's sizeable exhibit file together with her declaration at the time it filed its response brief." [Dkt. no. 1222 at PageID.14935.]

Although the Government refers to its July 21, 2023 filing as an **amended** version of Exhibit 8, the contents of the declaration were not amended in any way. The Government merely **supplemented** the Dotson Declaration with the exhibits that the Government was unable to upload when it filed the Answer. The better practice would have been for the Government to request

---

[5] Docket number 1222, PageID.14935-36, is the Government's explanation of the filing, and docket number 1222, PageID.14937 is the Certificate of Service. Docket number 1222-1 is the Amended Dotson Declaration.

leave to supplement the Dotson Declaration with Exhibits A through M. If the Government had filed such a request on July 21, 2023, instead of filing docket number 1222 without leave of Court, this Court would have found that there was good cause to permit the late filing and would have granted the request. This Court notes that the Dotson Declaration – which was timely filed in the Answer - clearly refers to Exhibits A through M, the Government filed docket number 1222 the day after filing its Answer, and the late filing of the Amended Dotson Declaration did not impair Williams's ability to file his Reply in a timely manner. In fact, Williams filed his Reply early. See OSC at 2 (stating the deadline for the optional reply was 8/10/23; Reply, filed 7/26/23 (dkt. no. 1226).

Williams's request to strike the Amended Dotson Declaration is therefore denied, and this Court will consider the Amended Dotson Declaration, including Exhibits A through M, in ruling on Williams's Section 2255 Motion.[6]

---

[6] This Court notes that the letter included within Exhibit A to the Amended Dotson Declaration is unreadable. See dkt. no. 1222-1 at PageID.14949-50. Dotson states "Williams' letters were written in pencil and [Exhibit A, a letter from Williams that Dotson received on November 30, 2020,] could not be made darker." [Amended Dotson Decl. at ¶ 4 & n.2.] Therefore, although this Court is able to consider information visible in the postmark of the envelope included within Exhibit A, see dkt. no. 1222-1 at PageID.124951, this Court cannot consider the contents of the letter.

## II.  <u>Ground Three – Equal Protection Violation</u>

The Government first argues this Court should not consider Ground Three because it was raised and rejected on appeal. In Ground Three, Williams alleges that, "[i]n the voir dire process, [Williams] noticed that there were no African-Americans, Hispanics, Hawaiians, Filipinos, Samoans, Fijians, Chinese, Koreans, Portuguese or other 'local races' on the juror panel to choose from." [Section 2255 Motion at 17.] According to Williams, he challenged the jury pool under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), but this Court ignored his objection. [<u>Id.</u> at 17, 20.] Ultimately, "the majority of the jurors were either Asians (specifically of Japanese descent) or Caucasian," and Williams argues the jury was not a jury of his peers, and it was biased against him because of he is African American. [<u>Id.</u> at 17.] Williams therefore argues his Fifth Amendment right to equal protection under the law was violated.[7] [<u>Id.</u> at 20.] Williams raised the lack of African Americans in the jury pool

---

[7] Williams argues his equal protection rights under the Fourteenth Amendment were violated. <u>See, e.g.,</u> Section 2255 Motion at 16. This Court must liberally construe the Section 2255 Motion because Williams is proceeding pro se. <u>See Jackson</u>, 21 F.4th at 1216. Because Williams was tried in federal court, this Court liberally construes the equal protection challenge in Ground Three as a Fifth Amendment challenge. <u>Cf. United States v. Hernandez-Estrada</u>, 749 F.3d 1154, 1166–67 (9th Cir. 2014) (en banc) (analyzing the defendant's equal protection challenge to the district court's jury venire under the Fifth Amendment).

as an issue on appeal, and the Ninth Circuit rejected his argument. See Ninth Circuit Memorandum at 3-4.

Where a petitioner seeks Section 2255 relief based on an issue that was "determined on the merits" in the petitioner's direct appeal, the district court may refuse to consider that issue unless the petitioner establishes "manifest injustice or a change in the law." Polizzi v. United States, 550 F.2d 1133, 1135-36 (9th Cir. 1976) (quotation marks omitted) (citing Kaufman v. United States, 1969, 394 U.S. 217, 226-27 & n.8, 89 S. Ct. 1068, 22 L. Ed. 2d 227).[8] The Ninth Circuit ruled on the merits of Williams's challenge to the lack of African Americans in the jury pool, but Williams raised that point on appeal as an alleged violation of the Sixth Amendment's fair cross-section requirement. See Ninth Circuit Mem. Dispo. at 3-4. In contrast, the Section 2255 Motion asserts Ground Three as an equal protection challenge. [Section 2255 Motion at 16-20.]

The Ninth Circuit has stated that:

> In Castaneda [v. Partida, 430 U.S. 482, 97 S. Ct. 1272 (1977)], the Supreme Court articulated a three-step process for establishing a prima facie equal protection case: (1) establish that the group, of which the appellant is a member, is "one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or

---

[8] Kaufman was overruled on other grounds by Stone v. Powell, 428 U.S. 465 (1976). See, e.g., United States v. Talley, Case No. 99-cr-40235-JD-1, 2020 WL 709330, at *2 (N.D. Cal. Feb. 12, 2020).

as applied;" (2) prove the degree of underrepresentation "by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time;" and (3) discriminatory intent. Id. at 494, 97 S. Ct. at 1280. The third step, discriminatory intent, may be established by showing that a selection procedure "is susceptible of abuse or is not racially neutral," thus supporting the presumption of discrimination raised by the statistical showing under step two. Id. "Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case." Id. at 495, 97 S. Ct. at 1280. In order to rebut the presumption of unconstitutional action, the state must show "'that permissible racially neutral selection criteria and procedures have produced the monochromatic result.'" Id. at 494, 97 S. Ct. at 1280 (quoting Alexander v. Louisiana, 405 U.S. 625, 632, 92 S. Ct. 1221, 1226, 31 L. Ed. 2d 536 (1972)).

In contrast, a prima facie case for establishing a Sixth Amendment, fair cross-section violation does not require the appellant to prove discriminatory intent or require that the appellant be a member of the "distinct," excluded group. Duren v. Missouri, 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979). In Duren, the Supreme Court formulated a three-pronged test for establishing a prima facie violation of the Sixth Amendment fair cross-section requirement:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

Id. at 364, 99 S. Ct. at 668.

United States v. Esquivel, 88 F.3d 722, 725 (9th Cir. 1996).

Although a Fifth Amendment equal protection challenge and a Sixth Amendment fair cross-section challenge are distinct, both challenges "require a defendant to prove, inter alia, that the jury panel selection procedures systematically under-represent a distinctive group in the population from which the jury panel is drawn." United States v. Washington, 285 F. App'x 470, 472 (9th Cir. 2008) (citing Castaneda v. Partida, 430 U.S. 482, 494, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977) (Fifth Amendment); Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979) (Sixth Amendment)). In the instant case, the Ninth Circuit held that Williams "fail[ed] to provide data sufficient to show that the jury pool in the District of Hawaii 'does not adequately represent [African Americans] in relation to the number of such persons in the community[.]'" [Ninth Circuit Mem. Dispo. at 3 (quoting United States v. Esquivel, 88 F.3d 722, 726 (9th Cir. 1996)).] Because the Ninth Circuit has already considered and rejected Lawson's underrepresentation claim on the merits, this Court may decline to consider Williams's attempt to relitigate his same underrepresentation claim, unless Williams shows that there is manifest injustice or that there has been a change in the law. See Polizzi, 550 F.2d at 1135-36. Williams has shown neither. This Court therefore

14

declines to consider his attempt to relitigate the underrepresentation claim. The Section 2255 Motion is therefore denied as to Ground Three.

## III. <u>Ground Six - Ineffective Assistance of Appellate Counsel</u>

This Court next turns to Ground Six because whether Williams was deprived of the effective assistance of counsel on appeal because the ruling on this ground affects the Government's procedural default argument.

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at critical stages of a criminal proceeding[.]" <u>Lee v. United States</u>, 582 U.S. 357, 363 (2017) (citation and internal quotation marks omitted).

> The court reviews a claim of ineffective assistance of appellate counsel by applying <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See, e.g.</u>, <u>Bailey v. Newland</u>, 263 F.3d 1022, 1028 (9th Cir. 2001) (citations omitted). Under <u>Strickland</u>, "the petitioner must establish that: (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists 'that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 688). A court need not determine whether counsel's performance was deficient before examining whether the petitioner suffered prejudice as a result of the alleged deficiencies. <u>See</u> <u>Strickland</u>, 466 U.S. at 697. In other words, any deficiency that does not result in prejudice necessarily fails.
>
> "In applying <u>Strickland</u> to a claim of ineffective assistance of appellate counsel, [the Ninth Circuit has stated] that

> [<u>Strickland</u>'s] two prongs partially overlap
> when evaluating the performance of appellate
> counsel. In many instances, appellate
> counsel will fail to raise an issue because
> she foresees little or no likelihood of
> success on that issue; indeed, the weeding
> out of weaker issues is widely recognized as
> one of the hallmarks of effective appellate
> advocacy. . . . Appellate counsel will
> therefore frequently remain above an
> objective standard of competence (prong one)
> and have caused her client no prejudice
> (prong two) for the same reason — because
> she declined to raise a weak issue."
>
> <u>Bailey</u>, 263 F.3d at 1028-29 (quoting <u>Miller v.</u>
> <u>Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989)
> (internal citations and footnotes omitted)).

<u>United States v. Gordon</u>, CR. NO. 11-00479(01) JMS, 2020 WL
1493006, at *3 (D. Hawai`i Mar. 27, 2020) (alterations in
<u>Gordon</u>).

## A.   **Relevant Background**

Williams states Dotson initially agreed with him that
the arguments he wanted to raise on appeal, "'were great grounds
for appeal.'" [Section 2255 Motion at 23.] Dotson later informed
him that the only issues she would raise would be juror bias and
the lack of African Americans in the jury pool. [<u>Id.</u> at 24.]
According to Williams, he then sent Dotson a letter directing
her to withdraw as his counsel if she was unwilling to pursue
the arguments that he wanted to raise. [<u>Id.</u>; <u>id.</u>, Exh. 14
(letter dated 3/25/21 to Dotson from Williams ("3/25/21
Letter"), with mailing documentation).] However, Dotson did not

withdraw, and she ultimately filed his appeal without the arguments Williams wanted to raise. [Section 2255 Motion at 24.] Williams asserts that Dotson ignored the selective prosecution argument, which Williams believes "probably was the strongest ground for an appeal," "because she is of the same race as the prosecutors." [Id.] Williams also argues Dotson was constitutionally ineffective because she failed to raise the double jeopardy argument that he instructed her to raise. [Id. at 25.] Williams contends he was prejudiced by Dotson's failure to raise the arguments that he instructed her to raise because he lost his appeal. [Id. at 24.]

According to Williams, he told Dotson "there were at least 8 grounds that he wanted to address in his appeal," but Ground Six only refers to "Selective Prosecution, Double Jeopardy, Speedy Trial Violation, Judicial Bias and a few other grounds." [Id. at 23-24.] The only other ground that is listed in the 3/25/21 Letter is the failure to remove a biased juror, [Section 2255 Motion, Exh. 14 at PageID.14763,] and that argument was presented on appeal, see Ninth Circuit Mem. Dispo. at 2-3. Even liberally construing the relevant filings, this Court can only construe Ground Six as asserting that Dotson rendered constitutionally ineffective assistance because she failed to either: 1) raise selective prosecution, double jeopardy, violation of Williams's right to a speedy trial, and

17

judicial bias as issues on appeal; or 2) move to withdraw as Williams's counsel.

Dotson acknowledges that, in November 2020, by telephone and in a letter, Williams informed her of his desire to raise selective prosecution, double jeopardy, speedy trial, and judicial bias as issues on appeal. See Amended Dotson Decl. at ¶¶ 3-4. In a February 4, 2021 telephone call, Williams and Dotson discussed what Dotson describes as is "main grounds for appeal" – selective prosecution, speedy trial violation, and the lack of blacks in the jury pool. [Id. at ¶ 6.] According to Dotson, "Williams also complained about the Judge and her rulings on her motions, but nothing specific for an issue for appeal." [Id.] Dotson does not deny that she told Williams the grounds he wanted to raise "'were great grounds for appeal,'" but she states she always admonishes her clients that, although she wants to hear what they believe are the issues for appeal, she cannot determine the issues for appeal until she has "first read[] all the transcripts and other filed documents in the record and research[ed] any probable issues." See id. at ¶ 7.

Dotson states:

> I started researching several issues during
> February [2021] after I had completed my review
> of the transcripts and other documents and the
> [presentence report]. I reviewed the evidence
> again from the trial for each count in the
> indictment. I started researching the following
> issues: the juror issue, mail and wire fraud,

18

> vulnerable victim, deception under 18 USC
> §§ 1343, 1341, sovereign citizen, Batson, jury
> selection process, and selective prosecution.
> During my review of the transcripts and documents
> it was apparent that the speedy trial act was not
> violated.

[Id. at ¶ 9.] In March 2021, Dotson made several attempts to schedule a legal call with Williams. She was able to schedule one for March 30, 2021, but, on that date, she was informed that Williams was unavailable because he was in quarantine. [Id. at ¶ 11.]

Dotson acknowledges that she received the 3/25/21 Letter, but she points out that the 3/25/21 Letter was inconsistent with her prior correspondence with Williams. Although he was incarcerated in Florida, the 3/25/21 Letter was mailed from Honolulu, Hawai`i. Further, the 3/25/21 Letter was typewritten and had what purported to be an electronic signature, whereas the other letters Dotson previously received from Williams were hand-written with a pencil, signed by Williams, and stamped by the facility where Williams was incarcerated. See Amended Dotson Decl. at ¶ 12 & n.3. Dotson responded to Williams in a letter dated March 30, 2021 ("Dotson's 3/30/21 Response Letter"). Dotson stated it appeared that Williams had not personally written the 3/25/21 Letter, and Dotson requested that Williams send her a letter, written and signed by him, asking her to withdraw. She informed Williams

that she would file the letter with her motion to withdraw. <u>See</u>
<u>id.</u> at ¶ 13; <u>id.</u>, Exh. D (Dotson's 3/30/21 Response Letter).

Williams states he wrote the 3/25/21 Letter and sent
it to Rosy Thomas ("Thomas") so that Thomas could send the
letter by certified mail to create a record of Williams's
request that Dotson withdraw. <u>See</u> Reply, Declaration of Common
Law Counsel ("Williams Reply Decl.") at ¶ 7. He states, "Dotson
refused to file the withdrawal stating she wanted a hand written
request which is not required by law, for an attorney to file a
withdrawal" and was unnecessary because of the 3/25/21 Letter,
which he "electronically signed." [<u>Id.</u> at ¶¶ 11-12.]

Dotson and William had a legal call on April 2, 2021
that was almost one-hour long. According to Dotson, Williams did
not mention his request that she withdraw as his attorney.
[Amended Dotson Decl. at ¶ 14.] Dotson and Williams

> discussed the issues he had requested for his
> appeal, and [Dotson] explained why those issues
> were not viable due to [her] research and the
> facts from the transcripts and other documents in
> his record. [They] also discussed the appeal
> issues [Dotson] was already preparing for his
> Opening Brief. He had no objection to those
> issues; however, he still wanted [her] to include
> the selective prosecution issue.

[<u>Id.</u>] Williams disputes Dotson's account of the April 2, 2021
legal call. He states that, during the call, he reiterated the
contents of the 3/25/21 Letter. <u>See</u> Williams Reply Decl. at ¶ 9.

Dotson states that, based on her legal research, she determined that the record did not support a viable selective prosecution issue on appeal. Dotson explained this to Williams in a letter dated April 6, 2021 ("Dotson's 4/6/21 Letter"). [Amended Dotson Decl. at ¶ 15; id., Exh. F (Dotson's 4/6/21 Letter).]

Also on April 6, 2021, Dotson attempted to schedule a legal call with Williams, and the call occurred on April 12, 2021. During that call, Williams requested that she withdraw, and he said he would mail a letter requesting that she withdraw. Dotson prepared a motion to withdraw, but waited for the letter to file it. [Amended Dotson Decl. at ¶¶ 16-17.]

Dotson continued to draft Williams's opening brief. Because she still had not received the letter requesting her withdrawal, Dotson filed the opening brief on the April 28, 2021 deadline. See id. at ¶ 17; see also id. at ¶ 10 (stating the filing deadline). Dotson mailed Williams a copy of the opening brief and the excerpts of record. [Id. at ¶ 18; id., Exh. G (letter dated 4/28/21 to Williams from Dotson).]

On June 8, 2021, Dotson received a letter from Williams, dated June 2, 2021 ("Williams's 6/2/21 Letter"). [Amended Dotson Decl. at ¶ 19.] Williams's 6/2/21 Letter is hand-written and signed, and the postmark indicates that it was mailed from Florida. See id., Exh. H (Williams's 6/2/21 Letter).

Williams stated Dotson "did an <u>EXCELLENT</u> job in [her] argument
for juror bias," but he expressed his disappointment with her
failure to present the "[s]tronger grounds for appeal like
Selective Prosecution, Judge Bias, Speedy Trial violation,
Double Jeopardy and Unlawful Striking of [his] witnesses." [<u>Id.</u>
at PageID.14971 (emphasis in original).] Williams's 6/2/21
Letter does not mention his previous request that Dotson
withdraw. In fact, Williams asked Dotson to schedule a legal
call for them to discuss his appeal "and the possible outcomes
and [his] next step if they deny the appeal." [<u>Id.</u> at
PageID.14972.]

        The Government filed its answering brief on June 28,
2021, and Dotson had a legal call with Williams on July 14,
2021. Williams and Dotson did not discuss what Dotson should
address in the reply brief, but Williams told her that, on
July 6, 2021, he sent her a letter regarding how he wanted her
to respond to the Government's answering brief. [Amended Dotson
Decl. at ¶¶ 19-20.] However, Dotson did not receive the letter
until after she had filed the reply brief. <u>Id.</u> at ¶ 21; <u>see also</u>
<u>id.,</u> Exh. I (letter dated 7/6/21 to Dotson from Williams
("Williams' 7/6/21 Letter"), with mailing documentation).

        After the Ninth Circuit issued the Memorandum
disposition on March 16, 2022, Dotson "thoroughly reviewed" it
and "conclu[ded] that further appellate proceedings would not

                                22

bring about a change in those issues." [Amended Dotson Decl. at ¶ 23.] On March 17, 2022, Dotson sent Williams a letter transmitting the Memorandum disposition and explaining his options ("Dotson's 3/17/22 Letter"), including the filing a petition for a writ of certiorari to the United States Supreme Court. [Id. at ¶ 24; id., Exh. K (Dotson's 3/17/22 Letter).] Dotson explained that, under the applicable Ninth Circuit Rules and Supreme Court Rules, she could only file a petition for a writ of certiorari on Williams's behalf "'if in [her] considered judgment sufficient grounds exist[ed] for seeking Supreme Court review.'" [Amended Dotson Decl., Exh. K at PageID.14984 (quoting Ninth Circuit Rule 4-1(e)).]

On April 18, 2022, Dotson and Williams spoke on the telephone, and he requested that she withdraw immediately because he wanted to pursue further options pro se. Dotson sent Williams a letter explaining his options. She also provided him with her motion to withdraw and the Ninth Circuit's mandate. See Amended Dotson Decl. at ¶ 25; id., Exh. L (letter dated 4/18/22 to Williams from Dotson ("Dotson's 4/18/22 Letter")). The Ninth Circuit granted Dotson's motion to withdraw on April 20, 2022. [Ninth Circuit Order, filed 4/20/22 (dkt. no. 1183).]

Williams points out that Dotson ultimately filed her motion to withdraw based only upon his oral instruction during the April 18, 2022 telephone call. He argues this contradicts

23

Dotson's position that she could not file a motion to withdraw in 2021 without a letter bearing his hand-written signature. <u>See</u> Williams Reply Decl. at ¶¶ 13-17.

**B.**   **<u>Failure to Raise Issues on Appeal</u>**

As previously stated, this Court construes Ground Six as alleging Dotson was constitutionally ineffective because she failed to raise the following issues on appeal: selective prosecution, double jeopardy, violation of Williams's right to a speedy trial, and judicial bias. All of these arguments are without merit.

**1.**   **<u>Selective Prosecution</u>**

The Ninth Circuit has stated:

> "In our criminal justice system, the Government retains broad discretion as to whom to prosecute." <u>Wayte v. United States</u>, 470 U.S. 598, 607, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985) (quotations omitted); <u>United States v. Armstrong</u>, 517 U.S. 456, 464, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996) ("The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." (cleaned up)). However, prosecutorial discretion is not "unfettered." <u>Wayte</u>, 470 U.S. at 608, 105 S. Ct. 1524. In particular, the decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." <u>Id.</u> (internal citation and quotations omitted).

> To prove a selective prosecution claim, a defendant must show "discriminatory effect and discriminatory intent." <u>Armstrong</u>, 517 U.S. at 468, 116 S. Ct. 1480. Specifically, the defendant

bears the burden to "demonstrate that (1) other similarly situated individuals have not been prosecuted and (2) his prosecution was based on an impermissible motive." United States v. Sutcliffe, 505 F.3d 944, 954 (9th Cir. 2007).

"The standard for proving [a selective prosecution] claim is particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully." Id. (quoting Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 489, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999)); Armstrong, 517 U.S. at 464, 116 S. Ct. 1480 ("The presumption of regularity supports [the government's] prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." (internal quotations omitted)). As such, we "view the evidence in the light most favorable to the government" when reviewing such claims. [United States v.] Culliton, 328 F.3d [1074,] 1080-81 [(9th Cir. 2003) (per curiam)].

United States v. Rundo, 108 F.4th 792, 798-99 (9th Cir. 2024) (some brackets in Rundo) (footnote and some citations omitted).

Williams argues that he and his mother, Barbara Williams, were the only ones who worked for MEI or CLOA and were investigated and charged by the Government. [Section 2255 Motion at 7.] He asserts that Caucasian persons who were "engaged in the exact same business as . . . Williams who were employees or partners in his business were not prosecuted." [Id.] Williams identifies two Caucasian women, Kalena Franks and PJ Stewart, who worked in the Hawai`i office of MEI and CLOA who were not charged. [Id. at 10.] Williams also states Robyn Kelly, Rene

Powers, and four other persons who Williams does not identify by name are Caucasian and "were engaged in the exact same conduct and worked for the exact same company of [Williams]" in other states, but they were not charged. [Id.]

As evidence that he was intentionally targeted by the Government because he is African American, Williams points to a statement by Dr. Leonard G. Horowitz ("Dr. Horowitz") and the trial testimony of Federal Bureau of Investigation ("FBI") Special Agent Joseph Lavelle ("Agent Lavelle"). [Id. at 7-8 (citing Section 2255 Motion, Exh. 1 (pages 14 and 15 of Trial Transcript Day 4),[9] Exh. 15 (letter dated 10/20/20 to this Court from Leonard G. Horowitz ("Horowitz Letter"))).] Williams also cites other portions of Agent Lavelle's testimony as evidence that Williams was targeted for investigation and prosecution because of Williams's race. See id. at 9-11 (citing Section 2255 Motion, Exhs. 2-4, 7 (excerpts of Trial Transcript Day 3), Exh. 5 (excerpt of Trial Transcript Day 4)).[10]

Agent Lavelle testified that one of Williams's Caucasian employees in Florida, Donna Hickenbottom, was investigated but never charged. Other than that instance, none

---

[9] The complete transcript of Jury Trial – Day 3 ("Day 3 Trial Transcript") was filed on May 30, 2020. [Dkt. no. 998.]

[10] The complete transcript of Jury Trial – Day 4 ("Day 4 Trial Transcript") was filed on May 30, 2020. [Dkt. no. 999.]

26

of Williams's Caucasian employees were investigated, and none
were charged. <u>See</u> Day 4 Tr. Trans. at 14-15. However, the fact
that no Caucasian MEI/CLOA employee was investigated or charged
is not enough, by itself, to establish selective prosecution.
Williams must establish that the Caucasian MEI/CLOA employees
who were not investigated and charged were "similarly situated"
to him. <u>See</u> <u>Sutcliffe</u>, 505 F.3d at 954.

        As to some of the individuals described in his motion,
Williams asserts they "engaged in the same business conduct"
that he engaged in, but he does not identify any evidence
supporting his position. <u>See, e.g.,</u> Section 2255 Motion at 10.
"[C]onclusory allegations which are not supported by a statement
of specific facts do not warrant habeas relief." <u>United States</u>
<u>v. Christie</u>, CR 13-00889 LEK, 2018 WL 1073128, at *10 (D.
Hawai`i Feb. 27, 2018) (brackets, citation, and internal
quotation marks omitted); <u>see also</u> Section 2255 Rule 2(b)(2)
(stating a Section 2255 motion must "state the **facts** supporting
each ground" (emphasis added)). Further, based on the evidence
at trial, those persons were not similarly situated because of
Williams's unique position in MEI/CLOA. <u>See, e.g.,</u> Transcript of
Trial Proceeding, Jury Trial – Day 12 ("Day 12 Tr. Trans."),
filed 5/30/20 (dkt. no. 1008), at 69 (Williams testified that
"MEI is my mortgage company"); Transcript of Trial Proceeding,
Jury Trial – Day 10 ("Day 10 Tr. Trans."), filed 5/30/20 (dkt.

no. 1006), at 102-03 (James Evers testified, in response to questioning by Williams, "the consumers basically said that they would go to these workshops where you would speak and then there would be follow-up, the door-to-door sales pitch, and that was mostly Henry Malinay. Most of them associate the hands-on stuff with Henry, but they understand that this is your business and your forms and all of that, and nobody's mistaken that this wasn't Henry's idea about how to help them with their mortgage. It was your business, it was your thoughts, that whole thing.").[11] Thus, the record is devoid of any evidence that there was a failure to prosecute similarly situated persons who were not African American.

Further, the record does not support Williams's position that there was an impermissible motive behind his prosecution. Williams primarily relies upon the Horowitz Letter and Agent Lavelle's testimony as evidence of the alleged impermissible motive. Dr. Horowitz testified as a defense witness in Williams's trial. See Transcript of Trial Proceeding, Jury Trial – Day 11 ("Day 11 Tr. Trans."), filed 5/30/20 (dkt.

---

[11] James Evers, Esq. ("Evers") is an enforcement attorney with the State of Hawai`i Office of Consumer Protection. He specializes in the investigation of mortgage rescue fraud. [Day 10 Tr. Trans. at 88-89.] Evers has "extensive knowledge" of Williams and Williams's business in Hawai`i because Evers participated in the office's investigation of Williams "for violating consumer protection laws pertaining to those people who were in foreclosure or at risk of foreclosure." [Id. at 94.]

no. 1007), at 92-176. Dr. Horowitz is one of Williams's former
clients. See id. at 95. The Horowitz Letter expresses
Dr. Hortwitz's belief that Williams should be released because
the almost four years that Williams was incarcerated before
sentencing was sufficient to "pa[y] his debt to society."
[Section 2255 Motion, Exh. 15 at 3.] Dr. Horowitz argued
Williams was being incarcerated "because he is a Black man whose
incarceration matters only to reduce the threat to society
committed by his good-faith, well-informed, defense of the
rights and properties of poor people defrauded by banks, title
companies, and courts . . . ." [Id. at 2.] Dr. Horowitz's
opinions do not constitute "clear evidence" of an impermissible
motive behind the Government's prosecution of Williams. See
Sutcliff, 505 F.3d at 954. Nor does Dr. Horowitz's trial
testimony, Agent Lavelle's trial testimony, or any other portion
of the trial record constitute clear evidence of an
impermissible motive.

Dotson investigated the possibility of asserting a
selective prosecution argument on appeal, but she ultimately did
not raise that issue because she determined, based on her legal
research and review of the record, that the issue was not
viable. See Amended Dotson Decl. at ¶ 15; id., Exh. F (Dotson's
4/6/21 Letter). The record supports Dotson's assessment of the
selective prosecution issue. Dotson's decision not to raise that

issue in Williams's appeal neither fell below "an objective standard of competence" nor caused prejudice to Williams. <u>See</u> <u>Bailey</u>, 263 F.3d at 1028. This Court therefore rejects Williams's argument that Dotson rendered constitutionally ineffective assistance by failing to raise the selective prosecution argument in his appeal.

### 2. **Double Jeopardy**

Williams alleges Dotson rendered constitutionally ineffective assistance by failing to argue on appeal that his conviction in the instant case violated the Double Jeopardy Clause of the Fifth Amendment. According to Williams:

> The instant case is one that the government alleged that the undersigned's mortgage documents and [Uniform Commercial Code ("UCC")] filings are fraudulent and that the undersigned used the mail and wire in furtherance of this alleged scheme even though there was no scheme to defraud. The undersigned was taken to trial in Florida for the same lawful business conduct of fighting illegal foreclosures by filing valid mortgage documents and UCC's to protect the homeowners from imminent foreclosure. . . .

[Section 2255 Motion at 12.] Williams argues the Government knew about the Florida Case and still charged him for the same conduct that was the basis of his conviction in the Florida Case, which Williams contends constituted an impermissible "divi[sion of] a single crime into a series of temporal or spatial units." [<u>Id.</u> (emphases omitted).] In addition to being convicted in the Florida Case and the instant case, Williams

30

argues the State of Hawai`i imposed civil administrative sanctions against him for the same conduct. [Id. at 13.]

First, Williams cannot rely on the civil administrative proceedings conducted by the State of Hawai`i because the Double Jeopardy Clause "protects only against the imposition of multiple **criminal** punishments for the same offense." See Hudson v. United States, 522 U.S. 93, 99 (1997) (emphasis in original) (citations omitted).

Further, even if the Florida Case and the prosecution in the instant case involved the same offense, "the prohibition against twice being placed in jeopardy does not foreclose a second prosecution by a different sovereign for the same offense." See United States v. Guy, 903 F.2d 1240, 1242 (9th Cir. 1990) (per curiam) (citing Heath v. Alabama, 474 U.S. 82, 93, 106 S. Ct. 433, 439, 88 L. Ed. 2d 387 (1985))). The United States of America and the State of Florida are different sovereigns. However, there is a narrow exception to the general rule regarding prosecutions by separate sovereigns: "If the second prosecution, otherwise permissible under the dual sovereignty rule, is not pursued to vindicate the separate interests of the second sovereign, but is merely pursued as a sham on behalf of the sovereign first to prosecute, it may be subject to a successful double jeopardy challenge." Id. (citation omitted). Williams failed to identify any evidence

31

that would support the application of this exception when he
sought pre-trial dismissal based on double jeopardy. See Order
Denying Defendant's "Sworn Motion to Dismiss Superseding
Indictment," filed 10/1/18 (dkt. no. 330) ("10/1/18 Order"), at
20; see also Minute Order - EO: Court Order Denying Def.'s
"Sworn Motion to Dismiss," filed 2/2/20 (dkt. no. 852), at
PageID.7471 (denying Williams's request for reconsideration of
the denial of dismissal based on double jeopardy grounds). The
Section 2255 Motion does not identify any evidence that Dotson
could have relied upon on appeal to argue that the exception to
the separate sovereign rule should have been applied in this
case.

     Moreover, although Williams's conduct that gave rise
to the charges in both cases was part of the same scheme, the
prosecution in the instant case did not involve the same
offenses as the offenses charged in the Florida Case. The
charges in the instant case were wire fraud and mail fraud,
while the charges that Williams was convicted of in the Florida
Case were one count of grand theft and two counts of filing
false property documents or records. Compare Superseding
Indictment, filed 3/28/18 (dkt. no. 154), with Answer, Exh. 7
(Florida Judgment). Further, the charges in the Florida Case
were based upon actions that occurred in Broward County,
Florida, either between January 1, 2015 and September 18, 2016

32

(the grand theft charge), between March 1 and 31, 2015 (the first false documents/records charge), or between May 1 and 31, 2015 (the second false documents/records charge). See Answer, Exh. 9 (Information filed in open court on 6/23/17 in the Florida Case). The Superseding Indictment in the instant case alleged that Williams, "in Hawaii and various other states, introduced and advertised MEI and CLOA and the services and products they allegedly provided," [Superseding Indictment at ¶ 6,] and that "MEI and CLOA did business in Hawaii, Texas, Florida, and other states, at the direction and under the control of Anthony T. Williams and Barbara Williams," [id. at ¶ 9]. Although the Superseding Indictment referred to Williams's activities in Florida, the charges in are based upon Williams's wire and mail communications on behalf of clients who were homeowners in Hawai`i. See id. at ¶¶ 22-23, 25, 27, 29. This Court therefore finds that the Section 2255 Motion does not identify any evidence that Dotson could have relied upon to argue on appeal to support Williams's position that the instant case and the Florida case prosecuted the same offenses.

    Dotson was aware that Williams wanted to raise a double jeopardy argument on appeal, but she ultimately did not raise that issue because she determined, based on her legal research and review of the record, that it was not viable. See Amended Dotson Decl. at ¶¶ 4, 14. The record supports Dotson's

33

assessment of the double jeopardy issue. Dotson's decision not to raise that issue in Williams's appeal neither fell below the required level competence nor caused prejudice to Williams. This Court therefore rejects Williams's argument that Dotson rendered constitutionally ineffective assistance by failing to raise the double jeopardy argument in his appeal.

### 3.   **Speedy Trial**

Williams alleges Dotson rendered constitutionally ineffective assistance by failing to argue on appeal that the multiple trial continuances violated his right to a speedy trial. He argues that, "[i]n total, the government's continuance in Williams' trial, was eight (8) times over his objections and Williams sat in jail for three (3) years awaiting trial from his indictment in February 17, 2017 to February 3, 2020, when the trial commenced and then another seven (7) months before he was sentenced." [Section 2255 Motion at 21.]

> The Sixth Amendment guarantees all criminal defendants "the right to a speedy and public trial." U.S. Const. amend. VI. Despite this guarantee, however, the Sixth Amendment does not prescribe any specified length of time within which a criminal trial must commence. See id. To give effect to this Sixth Amendment right, Congress enacted the Speedy Trial Act, which sets specified time limits after arraignment or indictment within which criminal trials must commence. Pub. L. No. 93-619, 88 Stat. 2076 (1975); see Furlow v. United States, 644 F.2d 764, 768-69 (9th Cir. 1981) (per curiam) (describing the Speedy Trial Act as the Sixth Amendment's "implementation").

As relevant here, the Speedy Trial Act
requires that a criminal trial begin within
seventy days from the date on which the
indictment was filed, or the date on which the
defendant makes an initial appearance, whichever
occurs later. 18 U.S.C. § 3161(c)(1). Recognizing
the need for flexibility depending on the
circumstances of each case, however, the Speedy
Trial Act "includes a long and detailed list of
periods of delay that are excluded in computing
the time within which trial must start." Zedner
v. United States, 547 U.S. 489, 497, 126 S. Ct.
1976, 164 L. Ed. 2d 749 (2006); see 18 U.S.C.
§ 3161(h). A court may exclude periods of delay
resulting from competency examinations,
interlocutory appeals, pretrial motions, the
unavailability of essential witnesses, and delays
to which the defendant agrees. 18 U.S.C.
§ 3161(h). The Speedy Trial Act also includes an
ends of justice provision, allowing for the
exclusion of time where a district court finds
"that the ends of justice served by taking such
action outweigh the best interest of the public
and the defendant in a speedy trial." Id.
§ 3161(h)(7)(A). . . .

United States v. Olsen, 21 F.4th 1036, 1040-41 (9th Cir. 2022)

(per curiam).

In assessing a claim that a defendant's
constitutional right to a speedy trial was
denied, the court must weigh four factors:
"whether delay before trial was uncommonly long,
whether the government or the criminal defendant
is more to blame for that delay, whether, in due
course, the defendant asserted his right to a
speedy trial, and whether he suffered prejudice
as the delay's result." Doggett v. United States,
505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d
520 (1992) (citing Barker v. Wingo, 407 U.S. 514,
530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).
None of the factors is "a necessary or sufficient
condition to the finding of a deprivation of the
right of speedy trial. Rather, they are related
factors and must be considered together with such

other circumstances as may be relevant." <u>Barker</u>,
407 U.S. at 533, 92 S. Ct. 2182. However, "no
showing of prejudice is required when the delay
is great and attributable to the government."
<u>United States v. Shell</u>, 974 F.2d 1035, 1036 (9th
Cir. 1992).

> The length of the delay is to some
> extent a triggering mechanism. Until there
> is some delay which is presumptively
> prejudicial, there is no necessity for
> inquiry into the other factors that go into
> the balance. Nevertheless, because of the
> imprecision of the right to speedy trial,
> the length of delay that will provoke such
> an inquiry is necessarily dependent upon the
> peculiar circumstances of the case.

<u>Barker</u>, 407 U.S. at 530, 92 S. Ct. 2182.

<u>United States v. Luong</u>, No. 2:96-cr-0350 WBS AC, 2023 WL

5487350, at *11–12 (E.D. Cal. Aug. 24, 2023).[12]

### a.    Length of the Delay and Williams's Assertion of His Speedy Trial Right

Here, the Government acknowledges that the delay of

approximately three years before the time of trial is

presumptively prejudicial. <u>See</u> Answer at 21-22. The Government

also acknowledges that Williams timely asserted his rights under

the Speedy Trial Act, <u>see id.</u> at 23, but a timely assertion of

speedy trial rights does not, by itself, warrant dismissal. <u>See</u>

<u>United States v. Turner</u>, 926 F.2d 883, 889 (9th Cir. 1991); <u>see</u>

<u>also</u> <u>United States v. Gregory</u>, 322 F.3d 1157, 1162 n.4 (9th Cir.

---

[12] The magistrate judge's report and recommendation in <u>Luong</u>
was adopted by the district judge. 2023 WL 6276442 (E.D. Cal.
Sept. 26, 2023).

2003) ("the prompt assertion of speedy trial rights weighs, at least slightly, in the defendant's favor" (citations omitted)).

      **b.**     **Reason for the Delay**

        Even if Dotson had raised the speedy trial issue in Williams's appeal, she would not have been able to establish that the Government was more to blame for the delay than Williams was. Although Williams was indicted in this case on February 15, 2017, he was detained in Florida because of the Florida Case. On July 10, 2017, the Government obtained a writ compelling the Warden of the Florida State Prison to produce Williams for prosecution in this case. See Application and Order for Writ of Habeas Corpus ad Prosequendum, filed 7/10/17 (dkt. no. 22); Writ of Habeas Corpus ad Prosequendum, filed 7/10/17 (dkt. no. 23). Williams was arrested for the charges in the Indictment on September 21, 2017, his initial appearance proceedings began on September 25, 2017, and the proceedings were completed on September 29, 2017. See Warrant for Arrest/Return (executed), filed 9/22/17 (dkt. no. 29); Minutes, filed 9/25/17 (dkt. no. 30) ("9/25/17 Minutes"); 9/29/17 Williams Minutes. Thus, the seventy-day Speedy Trial Act period began to run on September 25, 2017. See 18 U.S.C. § 3161(c)(1) ("In any case in which a plea of not guilty is entered, the trial of a defendant charged in an . . . indictment with the commission of an offense shall commence within seventy days from

the filing date (and making public) of the . . . indictment, or
from the date the defendant has appeared before a judicial
officer of the court in which such charge is pending, whichever
date last occurs."). The October 17, 2017 trial date in effect
at that time had been set during earlier proceedings related to
Williams's co-defendant, Anabel Cabebe ("Cabebe"). See First
Stipulation Continuing Trial Date and Excluding Time Under the
Speedy Trial Act; Order Continuing Trial and Excluding Speedy
Trial Act Time, filed 3/17/17 (dkt. no. 13).

 During the September 29, 2017 proceedings, the
Government made an oral request to have the cased declared
complex, which would allow the trial date to be set beyond the
seventy-day Speedy Trial Act period. See 18 U.S.C.
§ 3161(h)(7)(B)(ii). Over Williams's objection, but with the
agreement of Cabebe's counsel, this Court declared the case
complex, and trial was continued from October 17, 2017 to
November 21, 2017. See 9/29/17 Williams Minutes at PageID.118;
see also Order Granting Government's Motion to Declare Case
Complex Under the Speedy Trial Act, filed 4/6/18 (dkt. no. 187);
Order Continuing Trial Date and Excluding Time Under the Speedy
Trial Act, filed 4/6/18 (dkt. no. 188).

 During an October 23, 2017 proceeding, Cabebe's
counsel made an oral request to continue the trial date, and
this Court granted the request over Williams's objection. The

38

November 21, 2017 trial date was continued to May 15, 2018. See
Minutes, filed 10/23/17 (dkt. no. 54) ("10/23/17 Minutes"), at
PageID.238; see also Order Continuing Trial Date and Excluding
Time Under the Speedy Trial Act, filed 4/6/18 (dkt. no. 190).

The Superseding Indictment was filed on March 28,
2018, and it added Barbara Williams as a defendant. [Dkt.
no. 154.] Williams's and Cabebe's arraignment and plea to the
Superseding Indictment was held on April 4, 2018, and the
May 15, 2018 trial date was left in place. See Minutes, filed
4/4/18 (dkt. no. 184). Barbara Williams's arraignment and plea
was held on April 23, 2018. [Minutes, filed 4/23/18 (dkt.
no. 229).] A trial scheduling conference for all three
defendants was held on April 25, 2018. [Minutes, filed 4/25/18
(dkt. no. 235) ("4/25/18 Minutes").] Williams objected to any
trial continuance, but Cabebe and Barbara Williams agreed to a
continuance and waived their speedy trial rights. [Id. at
PageID.1943.] The May 18, 2018 trial date was continued to
December 18, 2018. Id. at PageID.1944; see also Order Continuing
Trial Date and Excluding Time Under the Speedy Trial Act, filed
9/6/18 (dkt. no. 311).

On April 11, 2018, the Government filed a Motion for
Judicial Determination of the Mental Competency of the Accused
("Competency Motion"). [Dkt. no. 197.] This Court granted the
Competency Motion, over Williams's objections, in an October 1,

2018 entering order ("10/1/18 EO"). [Dkt. no. 331.] In granting
the motion, this Court noted that it could not "cannot find
either that the Government's [Competency] Motion is frivolous or
that the Government filed the [Competency] Motion in bad faith."
[10/1/18 EO at PageID.3237.] Based on the projected completion
of the evaluator's report, this Court concluded that the
competency issue could not be resolved prior to the scheduled
December 18, 2018 trial date. This Court vacated the trial date
and stated it would reset the trial date after evaluator's
report was filed. See Minutes - EO: Court Order Directing the
Government and Defendant Anthony Williams to Proceed with
Competency Evaluation and Vacating Trial Date, filed 10/24/18
(dkt. no. 359) ("10/24/18 Minutes"), at PageID.3372.

        The evaluator's report was filed on January 3, 2019.
[Dkt. no. 404 (filed under seal).] This Court found William
competent to proceed with trial and reset the trial date for
February 25, 2019. See Minutes – EO: Regarding the **SEALED** Report
of Mental Competency Evaluation, filed 1/7/19 (dkt. no. 406)
("1/7/19 EO"). However, on January 15, 2019, Barbara Williams
filed a motion to continue the February 25, 2019 trial date
because of her counsel's scheduling conflict and because
additional time was needed to review discovery and prepare her
defense. [Dkt. no. 409.] On January 18, 2019, Williams filed an
objection to Barbara Williams's motion, and Cabebe filed a

40

joinder in Barbara Williams's motion on January 24, 2019. [Dkt. nos. 417, 419.] During a February 1, 2019 hearing, this Court granted Barbara Williams's motion and set a new trial date of January 21, 2020. See Minutes, filed 2/1/19 (dkt. no. 424) ("2/1/19 Minutes"); see also Order Continuing Trial Date and Excluding Time Under the Speedy Trial Act, filed 2/11/19 (dkt. no. 429).

This Court subsequently asked the parties whether the trial date could be advanced to January 13, 2020 or continued to January 27, 2020 or February 3, 2020. The Government expressed a preference for February 3, 2020, and Cabebe and Barbara Williams each stated she did not oppose the continuance to February 3, 2020. Williams objected to the continuance on speedy trial grounds. See Order Continuing Trial Date and Excluding Time Under the Speedy Trial Act, filed 12/6/19 (dkt. no. 692) ("12/6/19 Order"), at 2-3. Over Williams's objection, the trial was continued to February 3, 2020, and the period from January 21, 2020 to February 3, 2020 was excluded from the computation of the time in which the trial was required to commence under the Speedy Trial Act. [Id. at 6 (citing 18 U.S.C.

§§ 3161(h)(7)(A) and (h)(7)(B)).] Williams's trial commenced on February 3, 2020.[13] See Minutes, filed 2/3/20 (dkt. no. 865).

The continuance of the trial date from October 17, 2017 to November 21, 2017 was prompted by the Government's request to have the case declared complex, see 9/29/17 Williams Minutes at PageID.118, and the time between the December 18, 2018 trial date and the February 25, 2019 was attributable to the Government's Competency Motion, see 10/24/18 Minutes at PageID.3372; 1/7/19 EO. Further, the time between January 21, 2020 and February 3, 2020 is also arguably attributable to the Government. See 12/6/19 Order at 2-3.

However, the more extensive continuances from November 21, 2017 to May 15, 2018 and from February 25, 2019 to January 21, 2020 were attributable to motions to continue brought by Williams's co-defendants. See 10/23/17 Minutes at PageID.238; 2/1/19 Minutes. After the filing of the Superseding Indictment, Cabebe and Barbara Williams waived the speedy trial

---

[13] Barbara Williams pled guilty to a felony information in a separate case, and all pending dates as to the charges against her in the instant case were vacated. See United States v. Barbara Williams, CR 19-00195 LEK, Minutes – EP: Initial appearance, Waiver of Indictment, Arraignment & Plea to the Felony Information, filed 12/18/19. Cabebe pled guilty to a felony information in another case, and the Government stated it would move to dismiss the charges against her in the instant case after her sentencing. See United States v. Cabebe, CR 20-00001 LEK, Minutes – EP: Initial Appearance, Waiver of Indictment, Arraignment and Plea to the Superseding Information, filed 1/16/20.

period from May 15, 2018 to December 18, 2018. See 4/25/18
Minutes at PageID.1943-44. In addition, Cabebe agreed with the
Government's request to have the case declared complex, see
9/29/17 Williams Minutes at PageID.118, and Cabebe and Barbara
Williams did not object to the continuance from January 21, 2020
to February 3, 2020, see 12/6/19 Order at 2-3.

> "It is well established that an exclusion
> from the Speedy Trial clock for one defendant
> applies to all codefendants. . . . The
> attribution of delay to a codefendant, however,
> is limited by a reasonableness requirement."
> United States vs. Messer, 197 F.3d 330, 336 (9th
> Cir. 1999) (citation omitted). The proper test to
> evaluate the requirement "is whether the totality
> of the circumstances warrants a conclusion that
> the delay was unreasonable." Id. at 338.

United States v. Beal, Case No. 18-cr-00070-DKW-12, 2021 WL
2325331, at *6 (D. Hawai`i June 7, 2021).

Williams consistently objected to the continuances, as
noted above, and he moved to sever his case from his co-
defendants' case. See "Defendant Anthony Williams's Motion to
Sever His Trial from the Trial of Co-Defendants and for Leave to
Re-New," filed 10/30/18 (dkt. no. 365) ("Motion to Sever"). The
Motion to Sever was denied because Williams failed to establish
that he would be prejudiced by a joint trial with his co-
defendants. See Minutes – EP (365-1) Motion to Sever Defendant,
filed 11/26/18 (dkt. no. 392), at PageID.3594.

43

Although Williams consistently asserted his speedy trial rights, he also filed numerous motions that would have resulted in the exclusion of time for purposes of the Speedy Trial Act. See 18 U.S.C. § 3161(h)(1)(D) (excluding "[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). These motions include, but are not limited to, the following:

-on September 29, 2017, Williams filed his Motion for Constitutional Challenge to Grand Jury Rule 6(d) of the Federal Rules of Criminal Procedure and his Motion for Order of Dismissal, [dkt. nos. 37, 38,] and both motions were denied in an order issued on February 7, 2018, [dkt. no. 104];

-on April 26, 2018, Williams filed his "Motion for Disqualification of Judge Leslie Kobayashi," [dkt. no. 241,] and that motion was denied in an order issued on June 5, 2018, [dkt. no. 257];

-on July 20, 2018, Williams filed his "Sworn Motion to Dismiss Superseding Indictment," [dkt. no. 294,] and that motion was denied in an order issued on October 1, 2018, [dkt. no. 330];

-on March 19, 2019, Williams filed his "Motion for Suppression of Evidence," [dkt. no. 437,] and that motion was denied in an order issued on July 26, 2019, [dkt. no. 533]; and

-on November 6, 2019, Williams filed a "Motion of Private Attorney General, Anthony T. Williams Challenging the Jurisdiction of the Federal Corporation Called the 'United States' or 'United States of America as Outlined in Title 28 USC 3002(15)1(1)," [dkt. no. 633,] and he filed a "Motion for Miscellaneous Relief" on November 15, 2019, [dkt. no. 645,] and those motions were denied in an entering order issued on December 11, 2019, [dkt. no. 711].

This Court also notes that, in declaring this case complex, this Court found that "[t]his case involves a mortgage rescue scheme, charged in 11 Counts of wire fraud and 19 Counts of mail fraud, which covers approximately 200 properties/victims. Over 53,000 pages of discovery were provided, which included information from Hawaii, Texas, and Florida." [Order Granting Government's Motion to Declare Case Complex Under at 2.] In granting Barbara Williams's motion to continue and Cabebe's joinder therein, this Court found that:

> Since the Court's April 6, 2018 order declaring this matter complex, the government has produced a total of almost 70,000 pages of discovery. On January 23, 2019, the government made available for inspection at least another two terabytes of digital evidence.
>
> The attorneys in this matter have unavoidable conflicts with the current trial date of February 25, 2019. Counsel for the parties estimated that a jury trial in this matter could reasonably take four weeks. Counsel for Defendant Barbara Williams, Birney Bervar, Esq. represented that he has a scheduling conflict with the current trial date as a result of preplanned leave and a jury trial in United States v. Kealoha et al., Cr. No. 17-00582 JMS, which is scheduled and expected to begin on March 18, 2019. Standby counsel for Defendant Anthony Williams, Lars Isaacson explained that he also represents a defendant charged in the Kealoha matter. A four-week trial beginning on February 25, 2019 would conflict with the pre-scheduled Kealoha matter. Moreover, the trial date for the Kealoha matter was scheduled on May 9, 2018, before the current trial date in this matter was set.

>       A continuance of the trial date would ensure
>       that the defendants have adequate time necessary
>       for effective preparation for trial, taking into
>       account the exercise of due diligence. . . .

[Order Continuing Trial Date and Excluding Time Under the Speedy Trial Act, filed 2/11/19 (dkt. no. 429), at 3-4.] This Court considered whether the case could proceed to trial on the February 25, 2019 trial date if both Mr. Bervar and Mr. Isaacson were permitted to withdraw but concluded that new counsel would be unable to adequately prepare to begin trial on February 25, 2019. See id. at 4. This Court also noted that Williams did not present a specific objection to the new January 21, 2020 trial date because he "intentionally absented himself from [the hearing on the motion to continue] by refusing to be transported to Court by the U.S. Marshals Service." See id. at 4-5.

Under the totality of the circumstances, it is reasonable to attribute to Williams the delays caused by continuances requested or consented to by Cabebe and/or Barbara Williams. See Messer, 197 F.3d at 338. Further, in light of the complexity of this case, the length of those delays was reasonable. Thus, this Court cannot find that the Government was more to blame than Williams for the delay prior to the commencement of trial.

c.   **Prejudice**

This Court has already noted that the delay in this
case was presumptively prejudicial. The Ninth Circuit has stated
that

> presumptive prejudice is simply "'part of the mix
> of relevant facts, and its importance increases
> with the length of the delay.'" [United States
> v.] Beamon, 992 F.2d [1009,] 1013 [(9th Cir.
> 1993)] (quoting Doggett, 505 U.S. at 656, 112 S.
> Ct. 2686). As we have interpreted Doggett, "no
> showing of prejudice is required when the delay
> is great and attributable to the government."
> United States v. Shell, 974 F.2d 1035, 1036 (9th
> Cir. 1992). In contrast, we have held that when
> the government has been negligent and the delay
> does not far exceed the minimum time required to
> trigger the full Barker inquiry, "we must
> consider the amount of delay in relation to
> particularized prejudice." Beamon, 992 F.2d at
> 1014. . . .
>
>      Actual prejudice is typically demonstrated
> in three ways: "oppressive pretrial
> incarceration, anxiety and concern of the
> accused, and the possibility that the [accused's]
> defense will be impaired." Doggett, 505 U.S. at
> 654, 112 S. Ct. 2686 (internal quotation marks
> and citations omitted); Beamon, 992 F.2d at
> 1014. . . .

Gregory, 322 F.3d at 1162-63. The delay in the instant case was
not attributable solely to the Government, nor has Williams
established that the delay was the result of negligence by the
Government. Thus, Williams must establish prejudice.

Williams does not identify a specific way that his
defense was impaired because of the pre-trial delay. As the
Government points out, many of the motions that Williams filed

47

indicated that he needed a significant amount of additional time beyond the seventy-day Speedy Trial Act period to prepare for trial because "of a lack of access to technology, discovery, or prison accommodation." [Answer at 24-25 (citing motions).] Williams's speedy trial argument is based upon "oppressive pretrial incarceration" and the "anxiety and concern of the accused." See Doggett, 505 U.S. at 654; see also Section 2255 Motion at 21 (arguing "'anxiety, loss of employment, continued inability to find work, and . . . public humiliation' suffered by the defendant 'are forms of prejudice that the speedy trial right is intended to curtail'" (quoting State v. Vigil-Giron, 327 P.3d 1129 (N.M. Ct. App. 2014))). Williams's argument is misplaced because, prior to his arrest on the charges in the instant case, Williams had been serving his sentence in the Florida Case. See Answer, Exh. 7 (Florida Judgment). Thus, even if the instant case had been brought to trial within the seventy-day Speedy Trial Act period, Williams would still have experienced the anxiety, humiliation, and lack of employment associated with incarceration because of his sentence in the Florida Case. This Court therefore concludes that Williams has failed to establish that the pretrial delay in the underlying prosecution was prejudicial.

d.    <u>**Summary**</u>

Although the length of the pretrial delay weighs in Williams's favor, his timely assertion of his speedy trial rights, at best weighs only slightly in Williams's favor. In contrast, the reasons for the delay and the lack of prejudice weigh strongly in the Government's favor. This Court therefore concludes that Williams has failed to establish that his speedy trial rights were violated.

Dotson was aware that Williams wanted to raise a speedy trial argument on appeal, but she ultimately did not raise that issue because she determined, based on her legal research and review of the record, that it was not viable. <u>See</u> Amended Dotson Decl. at ¶¶ 4, 6, 8-9, 14. The record supports Dotson's assessment of the speedy trial issue. Dotson's decision not to raise that issue in Williams's appeal neither fell below the required level competence nor caused prejudice to Williams. This Court therefore rejects Williams's argument that Dotson rendered constitutionally ineffective assistance by failing to raise the speedy trial argument in his appeal.

4.    <u>**Judicial Bias**</u>

Williams argues this Court was biased in favor of the Government, and he quotes one exchange during trial as evidence of the alleged bias. <u>See</u> Section 2255 Motion at 27. The exchange

occurred during Williams's cross-examination of Patricia Mau-

Shimizu:[14]

> Q    Okay. You just mentioned LegalZoom. Do you –
> are you familiar with the lawsuit that the state bar
> associations filed against LegalZoom?
>
> A    No. I'm not a party to that.
>
> Q    Okay. If you was to look at the lawsuit, the
> lawsuit was about –
>
> THE COURT:    No, no. Do you have any objection
> to this? Isn't this far afield, Mr. –
>
> MR. YATES:    Yes, yes, Your Honor.
>
> THE COURT:    I mean, I don't want to earn your
> paycheck for you.
>
> MR. YATES:    I apologize, Your Honor. Out of
> scope and improper hypothetical.
>
> THE COURT:    All right. Sustained.
>
> So you need to ask her questions in the area that
> Mr. Yates asked her questions in about what you have
> to be to be licensed, how she keeps the database.
> We're going kind of far afield here.

[Day 7 Tr. Trans. at 113.] According to Williams, this was

"[t]he most egregious occurrence" of this Court's bias, and it

was "extremely prejudicial" because "no jury could witness that

exchange and not have the impression that the judge favors the

prosecution over the defense." [Section 2255 Motion at 27.]

---

[14] At the time of trial, Patricia Mau-Shimizu was the
Executive Director of the Hawaii State Bar Association.
[Transcript of Trial Proceeding, Jury Trial – Day 7 ("Day 7 Tr.
Trans."), filed 5/30/20 (dkt. no. 1003), at 89-90.]

Although Williams describes this exchange during Trial Day 7 as the worst example of the alleged bias, the Section 2255 Motion does not identify any other incident of alleged bias. Further, Williams argues this incident is sufficient, by itself, to warrant Section 2255 relief. This Court therefore construes Williams's judicial bias argument as being based solely upon the exchange during Trial Day 7. As previously noted, during the underlying proceedings in this case, Williams sought to have this Court disqualified, but that motion was denied. See "Motion for Disqualification of Judge Leslie Kobayashi," filed 4/26/18 (dkt. no. 241); Order Denying Motion for Disqualification of Judge Leslie Kobayashi, filed 6/5/18 (dkt. no. 257). This Court construes the Section 2255 Motion as alleging that the exchange during Trial Day 7 is evidence that his motion for disqualification should have been granted.

In the context of a Section 2255 motion:

"A showing of judicial bias requires facts sufficient to create actual impropriety or an appearance of impropriety." Crater v. Galaza, 491 F.3d 1119, 1131 (9th Cir. 2007). Thus, a judge must recuse when "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." United States v. Holland, 519 F.3d 909, 913 (9th Cir. 2008) (citing 28 U.S.C. § 455(a)). However, factors "ordinarily insufficient to require recusal" include the "mere fact that a judge has previously expressed . . . a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense", "prior rulings

in the proceeding, or another proceeding, solely
because they were adverse" or "mere familiarity
with the defendant(s)." <u>United States v. Johnson</u>,
610 F.3d 1138, 1147 (9th Cir. 2010).

. . . The Ninth Circuit explained that under
Supreme Court precedent "judicial rulings or
information acquired by the court in its judicial
capacity will rarely support recusal." <u>Id.</u>
(citing <u>Liteky v. United States</u>, 510 U.S. 540,
555 (1994)). Thus, Judge Alsup's rulings and
sanctions in the prior case against the <u>Johnson</u>
defendants, and their attorney, did not warrant
recusal because "[a]dverse findings do not equate
to bias." <u>Id.</u> at 1148.

<u>McVay v. United States</u>, Case No. 19-CV-04534-LHK, 2022 WL

137733, at *9 (N.D. Cal. Jan. 14, 2022) (some alterations in

<u>McVay</u>). In <u>Liteky</u>, the Supreme Court stated,

judicial remarks during the course of a trial
that are critical or disapproving of, or even
hostile to, counsel, the parties, or their cases,
ordinarily do not support a bias or partiality
challenge. They **may** do so if they reveal an
opinion that derives from an extrajudicial
source; and they **will** do so if they reveal such a
high degree of favoritism or antagonism as to
make fair judgment impossible. An example of the
latter (and perhaps of the former as well) is the
statement that was alleged to have been made by
the District Judge in <u>Berger v. United States</u>,
255 U.S. 22 (1921), a World War I espionage case
against German-American defendants: "One must
have a very judicial mind, indeed, not [to be]
prejudiced against the German Americans" because
their "hearts are reeking with disloyalty." <u>Id.</u>,
at 28 (internal quotation marks omitted). **Not**
establishing bias or partiality, however, are
expressions of impatience, dissatisfaction,
annoyance, and even anger, that are within the
bounds of what imperfect men and women, even
after having been confirmed as federal judges,
sometimes display. A judge's ordinary efforts at
courtroom administration — even a stern and

52

> short-tempered judge's ordinary efforts at
> courtroom administration — remain immune.

<u>Liteky</u>, 510 U.S. at 555–56 (alteration and emphases in <u>Liteky</u>).

Williams alleges this Court improperly "'coached'" Assistant United States Attorney Gregg Paris Yates to object to a question posed by Williams. [Section 2255 Motion at 27.] By encouraging Mr. Yates to object and sustaining the objection, this Court prevented Williams from attempting to elicit testimony that was beyond the scope of Ms. Mau-Shimizu's testimony on direct examination. This was an "ordinary effort[] at courtroom administration," and it does not establish bias, even if was an "expression[] of impatience, dissatisfaction, annoyance, [or] even anger" at Williams's cross-examination. <u>See</u> <u>Liteky</u>, 510 U.S. at 555–56. Williams's position that the Trial Day 7 exchange established that his earlier motion for disqualification should have been granted was meritless.

Dotson was aware that Williams wanted to raise a judicial bias argument on appeal, but she ultimately did not raise that issue because she determined, based on her legal research and review of the record, that it was not viable. <u>See</u> Amended Dotson Decl. at ¶¶ 3, 14. The record supports Dotson's assessment of the judicial bias issue. Dotson's decision not to raise that issue in Williams's appeal neither fell below the required level competence nor caused prejudice to Williams. This

Court therefore rejects Williams's argument that Dotson rendered constitutionally ineffective assistance by failing to raise the judicial bias argument in his appeal.

> **C.    Failure to Withdraw**

Williams also argues Dotson rendered constitutionally ineffective assistance because she failed to withdraw as his appellate counsel after he instructed her, in a letter sent by certified mail, to withdraw if she was unwilling to pursue the issues he wanted to raise on appeal. See Section 2255 Motion at 24 (citing Section 2255 Motion, Exh. 14 (3/25/21 Letter)). Dotson did not file a motion to withdraw based on the 3/25/21 Letter because it did not appear to have been written by Williams, and she instructed him to send a letter written and signed by him if he wanted her to withdraw. See Amended Dotson Decl. at ¶¶ 12-13; id., Exh. D (Dotson's 3/30/21 Response Letter). Williams states he personally wrote the 3/25/21 Letter, but he sent it to Thomas so that she could send the letter by certified mail. [Williams Reply Decl. at ¶ 7.] Williams also argues his electronic signature on the 3/25/21 Letter was valid and binding, and he verbally confirmed his desire to have Dotson withdraw during a number of subsequent legal calls. [Reply at ¶¶ II.1-5; id. at ¶ I.12.] Further, Williams argues Dotson ultimately withdrew from the case based on his verbal request after the Ninth Circuit issued its Memorandum disposition.

54

Williams argues there was no legal basis for Dotson to refuse to withdraw based on the 3/25/21 Letter and/or his confirming verbal requests. [Id. at ¶¶ I.13-15.]

It is not necessary for this Court to determine factual issues regarding when and how Williams conveyed his desire to have Dotson withdraw, nor is it necessary for this Court to determine whether Dotson rendered deficient performance by failing to file a motion to withdraw based on the 3/25/21 Letter or based upon Williams's verbal instructions prior the Ninth Circuit's issuance of the Memorandum disposition. See Strickland, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"). Williams did not suffer prejudice as a result of Dotson's failure to file a motion to withdraw while the appeal was pending. Williams argues that, if Dotson had withdrawn, his new attorney would have pursed the grounds that Dotson refused to raise, and Williams argues he was prejudiced by Dotson's failure to withdraw "in that he lost his appeal." [Section 2255 Motion at 24.] However, all of the arguments that Williams identifies in Ground VI are meritless. Therefore, even if Dotson had withdrawn and a new attorney asserted the issues on appeal that Williams wanted Dotson to raise, those arguments would have failed, and the outcome of Williams's appeal would have been the

same. Because the result of Williams's Ninth Circuit appeal would have been the same even if Dotson had withdrawn, Dotson's failure to withdraw while the appeal was pending did not constitute ineffective assistance. See Bailey, 263 F.3d at 1028.

> ### D.   Ruling

Williams has not established any instance where Dotson rendered constitutionally ineffective assistance of counsel. His Section 2255 Motion is therefore denied as to Ground Six.

## IV.   Procedural Default

The Government argues Grounds One, Two, Four, Five, Seven, Eight, Nine, and Ten are procedurally defaulted. See Answer at 1. This Court agrees with the Government that all of the arguments raised in Grounds One, Two, Four, Five, Seven, Eight, Nine, and Ten could have been raised in Williams's direct appeal, but none of the arguments were raised.

> A § 2255 movant procedurally defaults those claims that could have been raised on direct appeal, but were not. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003); United States v. Dunham, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal."). Procedural default may be overcome "only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" United States v. Braswell, 501 F.3d 1147, 1149 (9th Cir. 2007) (citing Bousley, 523 U.S. at 622). Habeas review

is not a substitute for an appeal. <u>Bousley</u>, 523
U.S. at 621.

"Cause" that excuses the failure to raise a
claim on appeal "must be something external to
the [movant], something that cannot fairly be
attributed to him." <u>Coleman v. Thompson</u>, 501 U.S.
722, 753 (1991); <u>Murray v. Carrier</u>, 477 U.S. 478,
488 (1986). Examples of external factors that
constitute cause include "interference by
officials," or "a showing that the factual or
legal basis for a claim was not reasonably
available to counsel." <u>Murray</u>, 477 U.S. at 488;
<u>see</u> <u>United States v. Helmsley</u>, 985 F.2d 1202,
1206 (2d Cir. 1993) (explaining that "cause can
be established by showing that the claim is based
on newly discovered evidence that could not
reasonably have been discovered" prior to
default).

If a movant shows "cause," the "actual
prejudice" prong requires a movant to demonstrate
"not merely that the errors at his trial created
a **possibility** of prejudice, but that they worked
to his **actual** and substantial disadvantage,
infecting his entire trial with error of
constitutional dimensions." <u>United States v.
Frady</u>, 456 U.S. 152, 170 (1982).

A movant who fails to demonstrate cause and
prejudice can overcome procedural default by
demonstrating that he is "factually innocent, not
merely that his conviction was legally
insufficient." <u>Hirano v. United States</u>, 2017 WL
2661629, at *6 (D. Haw. June 20, 2017) (quoting
<u>Jones v. McGrew</u>, 2014 WL 2002245, at &4 [sic]
(C.D. Cal. May 15, 2014)); <u>see</u> <u>Bousley</u>, 523 U.S.
at 623 ("'[A]ctual innocence' means factual
innocence, not mere legal insufficiency."). "To
establish actual innocence, [a movant] must
demonstrate that, in light of all the evidence,
it is more likely than not that no reasonable
juror would have convicted him." <u>Muth v. Fondren</u>,
676 F.3d 815, 819 (9th Cir. 2012) (citation
omitted). And to demonstrate factual innocence, a
movant must produce "new reliable evidence —
whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Without such evidence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Id. at 316.

Exceptions to the cause and prejudice requirement include (1) claims that could not be presented without further factual development, and (2) ineffective assistance of counsel claims. See Bousley, 5[23] U.S. at 621-22 (claims requiring further factual development); Massaro v. United States, 538 U.S. 500, 505 (2003) (ineffective assistance of counsel claims); see also Braswell, 501 F.3d at 1150 n.1 (citing both Bousley and Massaro).

United States v. Drummondo-Farias, Cr. No. 12-00174 JMS, 2018 WL 2471449, at *5-6 (D. Hawai`i June 1, 2018) (alterations and emphases in Drummondo-Farias).

In response to the Government's assertion of procedural default, Williams argues the allegedly barred grounds were not raised on appeal because Dotson failed to raise them, and her failure to do so constituted ineffective assistance. See Reply at ¶ I.4. This Court has concluded that Williams failed to establish ineffective assistance of counsel. Further, none of the grounds that Williams raises in the Section 2255 Motion involves an issue that Williams was unable to raise on appeal because further factual development was required. There is

nothing in the record that supports the application of any other exception to the cause and prejudice requirement applies.

Williams has failed to establish cause because he has not identified any external factor that prevented him from raising the procedurally defaulted claims during his direct appeal. See Coleman, 501 U.S. at 753. Because cause **and** actual prejudice are required, see Braswell, 501 F.3d at 1149, it is not necessary for this Court to address the issue of whether there was actual prejudice.

Thus, in order to avoid procedural default, Williams must establish factual innocence. See Bousley, 523 U.S. at 623. This requires the presentation of "new reliable evidence . . . that was not presented at trial." Schlup, 513 U.S. at 324. Because Williams has not identified any new evidence, this Court concludes that he has failed to demonstrate factual innocence.

The arguments that Williams raises in Grounds One, Two, Four, Five, Seven, Eight, Nine, and Ten were procedurally defaulted. Williams cannot overcome the procedural default because he has failed to demonstrate either cause and actual prejudice or actual innocence. Further, Williams has not established any exception to the cause and prejudice requirement. Williams's Section 2255 Motion is therefore denied

as to Grounds One, Two, Four, Five, Seven, Eight, Nine, and Ten.[15]

## V.   <u>Certificate of Appealability</u>

This district court has stated that:

In dismissing a § 2255 motion, the court must also address whether [defendant/petitioner] should be granted a certificate of appealability ("COA"). <u>See</u> R. 11(a), Rules Governing Section 2255 Proceedings (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant"). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient." <u>Hayward v. Marshall</u>, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), <em>overruled on other grounds by</em> <u>Swarthout v. Cooke</u>, 562 U.S. 216 (2011). The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." <u>Id.</u> (citation and internal quotation marks omitted). The standard "requires something more than the absence of frivolity, but something less than a merits determination." <u>Id.</u> (internal quotation marks omitted).

The court carefully reviewed [the defendant/petitioner's] assertions and gave him every benefit by liberally construing them. Based on the above analysis the court finds that

---

[15] Even without regard to the procedural default analysis, Grounds One, Two, Four, and Nine would be denied on the merits for the reasons stated in the discussion of Ground Six. Ground Seven would be denied on the merits for reasons similar to Ground Nine. Grounds Five, Eight, and Ten would also be denied on the merits.

reasonable jurists could not find the court's
rulings debatable.

<u>Malivao v. United States</u>, CR 13-00885 LEK, 2018 WL 6834704, at

*7 (D. Hawai`i Dec. 28, 2018) (some citations omitted).

Reasonable jurists would not find that the rulings in this Order

regarding Williams's Section 2255 Motion are debatable. A

certificate of appealability therefore will not be issued.

<u>**CONCLUSION**</u>

For the foregoing reasons, Williams's Motion to Vacate

or Set Aside Conviction, filed April 25, 2023, is HEREBY DENIED.

In addition, this Court DENIES a certificate of appealability.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 20, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**USA VS. ANTHONY T. WILLIAMS**; CR 17-00101 LEK AND CV 23-00187
LEK; ORDER DENYING MOTION TO VACATE OR SET ASIDE CONVICTION AND
DENYING A CERTIFICATE OF APPEALABIITY